UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAMES DWYER,

                       Plaintiff,      **MEMORANDUM OF**
                                         **DECISION AND ORDER**
         -against-               11-CV-3057 (ADS)(WDW)

GENERAL MOTORS LLC,
                      Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Vessa & Wilensky, PC**
*Attorneys for the Plaintiff*
626 RexCorp Plaza
Uniondale, NY 11556
       By:    Michael P. Vessa, Esq.
                Philip Michael Vessa, Esq., Of Counsel

**Eckert Seamans Cherin & Mellott, LLC**
*Attorney for the Defendant*
10 Bank Street, Suite 1061
White Plains, NY 10606
       By:    Steven R. Kramer, Esq., Of Counsel

**SPATT, District Judge**.

On June 27, 2011, the Plaintiff James Dwyer (the "Plaintiff") commenced this product liability action against the Defendant General Motors LLC (the "Defendant"). The Plaintiff asserts claims for design defect, manufacturing defect, malfunction, express warranty, implied warranty and failure to warn in connection with the serious injuries he received as the result of an accident involving a shock absorber manufactured by the Defendant.

Presently before the Court is the Defendant's Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 motion for summary judgment on the ground of spoliation of evidence and three motions in limine. As to the motions in limine, the Court denies these motions without prejudice

with leave to refile just prior to or right after jury selection in this case. As to the motion for summary judgment, the Defendant seeks dismissal of this action or, in the alternative, exclusion of the Plaintiff's witness from testifying at trial. For the reasons that follow, the Defendant's motion is denied, but the Court, its discretion, imposes lesser sanctions against the Plaintiff.

## I. BACKGROUND

The Court will only briefly recount the underlying facts of this case before proceeding to a discussion of those facts which are relevant to the resolution of the Defendant's instant motion. The Court notes that it views the facts in a light most favorable to the Plaintiff, as the non-moving party.

### A. Underlying Facts

The Plaintiff is a thirty-year experienced A-rated automotive technician that works at one of the Defendant's car dealerships, East Hills Chevrolet Oldsmobile, Inc., located in Douglaston, New York. On March 16, 2010, a customer brought his 2008 Chevrolet Suburban (the "Suburban") to the dealership where the Plaintiff worked on the car and, on that same date, the Plaintiff replaced both the left and the right front shock absorbers.

Thereafter, on April 26, 2010, the customer returned to the dealership with his Suburban due to its supposed "harsh ride" and because the suspension service light was illuminated. The Plaintiff did not replace the left shock absorber, but instead, inspected it. He then ordered a strut reinforcement part.

One month later, on May 24, 2010, the customer again brought his Suburban back to the dealership because the suspension service light was illuminated. The next day, May 25, 2010, while repairing the Suburban's left front shock absorber, the Plaintiff was injured. In this regard,

allegedly, the shock absorber exploded off the Suburban and amputated a portion of the Plaintiff's ring finger on his dominant left hand. The incident also resulted in damage to the concrete floor. No one witnessed the incident other than the Plaintiff. Immediately following the accident, the Plaintiff was taken to North Shore University Hospital for treatment.

The Plaintiff claims that the accident was the result of manufacturing defects in the threading of the piston shaft/rod and piston of the shock absorber, leading the piston shaft/rod to ultimately separate from the threaded hole of the piston. Consequently, according to the Plaintiff, when he attempted to remove the shock absorber from the Suburban, the shock absorber was unable to control the tension of the suspension spring coiled around it and shot out of the Suburban with significant force. The Defendant denies the Plaintiff's allegations.

**B. The Alleged Spoliation**

On the day of the accident, after the Plaintiff had been taken to the hospital, the Plaintiff's co-worker John Them ("Them") observed parts of the subject shock absorber on the floor and parts of it still in the Suburban. One part that remained in the Suburban was the shock absorber's piston shaft/rod.

Several days later, Them was asked to complete the repairs for the Suburban. When he finished with the repairs, Them placed the parts from the subject shock absorber into a box. Eventually, he brought the box with the shock absorber parts to the Plaintiff's home and the Plaintiff took custody of the parts.

In April 2011, prior to the commencement of this action, the Plaintiff gave the shock absorber parts to his attorneys. About two weeks later, the Plaintiff's counsel took photographs of the parts. These photographs were later provided to the Defendant. The Plaintiff's counsel

3

then sent the parts to their retained experts, Kevin Kennedy & Associates, so that they could determine whether the subject shock absorber had any defects before they brought a product liability lawsuit on behalf of the Plaintiff. Upon receiving the shock absorber parts, the Plaintiff's experts took photographs that also were later provided to the Defendant.

The Plaintiff's experts concluded that a defect existed in the threading of the shock absorber's piston shaft/rod. However, they could not verify this conclusion without inspecting the interior of the shock absorber, including the piston, which is the part of the shock absorber that the piston shaft/rod was supposed to be threaded into. As such, the Plaintiff's counsel and experts corresponded with one another via email concerning how to access the interior of the shock absorber through its exterior casing. Ultimately, without the Defendant's knowledge or consent, the Plaintiff's experts cut open the exterior casing of the shock absorber in order to view its interior. In this regard, they drilled a hole and made four cuts into the outside casing.

However, the Plaintiff claims that the interior components of the shock absorber remained in the same condition as when they were delivered to the Plaintiff's counsel. According to the Plaintiff, the parts of the shock absorber that allegedly malfunctioned – that is, the threads of the piston shaft/rod and of the piston – were undisturbed by the dismantling of the shock absorber's exterior case.

On June 27, 2011, after the Plaintiff's experts had opened the shock absorber's outside casing, the Plaintiff commenced this action against the Defendant, serving them with the Complaint on July 20, 2011. The Defendant points out that the Plaintiff admitted that he never notified the Defendant that his experts intended to cut the subject shock absorber and disassemble it.

On March 16, 2012, the Defendant's expert, Victor Hakim ("Hakim") flew to the facility of the Plaintiff's expert and was presented with the dismantled shock absorber. In his May 17, 2013 affidavit, which was included with the Defendant's summary judgment motion, Hakim complains about the condition of the shock absorber. Nevertheless, of note, Hakim did not include any comments in his July 30, 2012 or August 7, 2012 reports suggesting that the actions of the Plaintiff's experts in cutting open the exterior casing of the shock absorber prevented him from reaching a conclusion with respect to the subject accident.

## II. DISCUSSION

### A. Legal Standard on a Fed. R. Civ. P. 56 Motion for Summary Judgment

It is well-settled that a motion for summary judgment under Fed. R. Civ. P. 56 may be granted by the Court only if the evidence presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("Rule 56(c) provides that the trial judge shall then grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law."); Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) ("Summary judgment is appropriate where there exists no genuine issue of material fact and based on the undisputed facts, the moving party is entitled to judgment as a matter of law.") (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)) (internal brackets omitted). However, the Court must endeavor to resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion for summary judgment. Anderson, 477 U.S. at 247–48.

Once a party moves for summary judgment, the non-movant must come forward with specific facts showing that a genuine issue exists to avoid the motion being granted. West-Fair Elec. Contractors v. Aetna Cas. & Surety Co., 78 F.3d 61, 63 (2d Cir. 1996); see also Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed. R. Civ. P. 56(e)). Typically, a genuine issue of material fact exists only if "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see Vann v. New York City, 72 F.3d 1040, 1049 (2d Cir. 1995). In addition, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

**B. Spoliation of Evidence**

"Spoliation of evidence occurs when a party or an agent of such party destroys or significantly alters evidence, or fails to properly preserve it for another's use as evidence in a pending or reasonable foreseeable litigation." Alaimo v. Trans World Airlines, Inc., No. 00 CV 3906(GBD), 2005 WL 267558, at *3 (S.D.N.Y. Feb. 3, 2005) (citing West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)). "Even in the absence of a discovery order," a Court may still impose sanctions for spoliation pursuant to its "inherent power to manage its own affairs." Id. (citing Residential Funding Corp. v. Degeorge Funding Corp., 306 F.3d 99, 106–07 (2d Cir. 2002); West, 167 F.3d at 779).

When deciding whether to impose sanctions for spoliation, "[i]n general, the courts look to (1) whether the party that destroys the evidence knew or had reason to anticipate at the time that litigation would ensue and that the item would be relevant to that litigation, (2) whether the spoliator acted in bad faith or negligently, (3) the importance of the evidence to the party's claim

6

or defense, and (4) the degree of prejudice engendered by the spoliation, which depends on whether other evidence addressing the same question is available to the parties." Luna v. American Airlines, 676 F. Supp. 2d 192, 201–02 (S.D.N.Y. 2009). If "spoliation is found, the court has broad discretion" with respect to the remedy, "but should 'tailor sanctions to insure that spoliators do not benefit from their wrongdoing—a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case.'" Id. at 202 (quoting Reilly v. NatWest Mkts. Group, 181 F.3d 253, 267 (2d Cir. 1999)).

"Dismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party. However, because dismissal is a drastic remedy, it should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." Burgos v. Satiety, Inc., No. 10–CV–2680 (MKB), 2013 WL 801729, at *5 (E.D.N.Y. Mar. 5, 2013) (quoting West, 167 F.3d at 779) (internal quotation marks omitted); see also Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 442 ("The degree of culpability bears on the severity of sanctions that are warranted. Severe sanctions for discovery violations, including dismissal, may be imposed for intentional conduct, such as bad faith or gross negligence.").

## C. As to the Defendant's Motion for Summary Judgment

The Defendant argues that, by cutting open the exterior case of the subject shock absorber, the Plaintiff significantly altered or destroyed relevant evidence. The Defendant further argues that the Plaintiff, through his experts, committed these actions in bad faith or else was grossly negligent so that it is entitled to summary judgment dismissing this case on the basis

7

of spoliation of evidence. In the alternative, the Defendant asks the Court to preclude the Plaintiff's expert from testifying at the trial.

Initially, the Court disagrees with the Defendant's assessment of the Plaintiff's conduct. At the outset, the Court does not deny that when the Plaintiff's experts handled the subject shock absorber parts, they were aware that they would be relevant to potential future litigation. Nor does the Court fail to recognize that the shock absorber parts are the key pieces of evidence in this case. Nevertheless, in the Court's view, the Defendant has not shown that shock absorber in question was significantly altered or destroyed, or that the Plaintiff acted with the requisite bad faith or gross negligence so as to warrant summary dismissal. Indeed, the Plaintiff's actions at most amount to negligence and resulted in limited prejudice to the Defendant. Therefore, only lesser, narrower sanctions are appropriate in this case.

Instructive here is the Second Circuit's decision in Dahoda v. John Deere Co., 216 F. App'x 124 (2d Cir. 2007). In Dahoda, the plaintiff brought a product liability action against the manufactures of a riding lawn tractor, claiming that the tractor was defective. However, the district court dismissed the case for spoliation of evidence, because the "plaintiffs' expert . . . disconnected the Operator Presence Control ("OPC") switch [from the subject riding lawn tractor] in order to conduct testing on that switch[.]" Id. at 125.

The Second Circuit reversed the district court's decision, finding that "the [d]istrict [c]ourt abused its discretion in imposing the ultimate sanction of dismissal for the conduct at issue" in the case. Id. In this regard, the Second Circuit noted that although the OPC switch had been removed from the tractor, "the switch itself [was] unaltered, intact, and available for testing; [the] plaintiffs' expert took photographs of how the switch was connected prior to

removal in an attempt to document how the connections were made; and [the] plaintiffs never hid from [the] defendant the fact that their expert had removed the switch as part of his testing." Id. at 125. Thus, the Second Circuit held that the "[p]laintiff's conduct [was] not so egregious as to warrant the harshest sanction of summary dismissal." Id.

Similarly, in this case, the Plaintiff's experts only cut open the exterior casing of the shock absorber so they could remove it and view the shock absorber's interior components, particularly the piston, which, along with the piston shaft/rod, is apparently the crucial evidence in this case. The Defendant has not explained how the exterior casing of the shock absorber was relevant evidence or would have been favorable to its case. See Williams v. New York City Transit Authority, No. 10 CV 0882(ENV), 2011 WL 5024280, at *8 (E.DN.Y. Oct. 19, 2011) ("The party seeking sanctions must make a showing that the destroyed evidence would have been favorable to its case.") (citing De Espana v. Am. Bureau of Shipping, No. 03 Civ.3573(LTS)RLE, 2007 WL 1686327, at *6 (S.D.N.Y. June 6, 2007)). Nor has the Defendant explained how removing it, which was necessary to access the piston, destroyed or significantly altered either the piston or the piston shaft/rod, the latter of which was separated from the shock absorber at the time of the accident.

Rather, like the switch in Dahoda, the piston and the piston shaft/rod at issue here were unaltered by the experts' actions and remained available for testing by the Defendant. Further, both the Plaintiff's attorneys and his experts took photographs of the shock absorber before the exterior casing was removed. These photographs are available to the Defendant and its experts. Lastly, there is nothing in the summary judgment record that suggests that the Plaintiff concealed the fact that his experts cut through the outside casing in order to access the interior of the shock

9

absorber. As such, no bad faith or gross negligence exists here and summary dismissal is inappropriate in this case.

Also instructive is the court's decision in Metlife Auto & Home v. Broan-Nutone, LLC, No. 1:08–cv–1089 (GLS/DRH), 2011 WL 3736550 (N.D.N.Y. Aug. 24, 2011). Similar to the Defendant in this case, the Metlife defendants argued "that dismissal of the complaint [was] appropriate because [the] plaintiffs preserved only that evidence that they believed would establish their theory of liability and did not collect the other evidence that might have established an alternative cause." Id. at *5 (citation and internal quotation marks and ellipses omitted). However, the court rejected the defendants' argument and held that "[t]hese vague allegations, without more, are insufficient to establish that plaintiffs engaged in spoliatory conduct warranting sanctions, much less the extreme sanction of dismissal." Id. Accordingly, the Defendant's attempt here to suggest that the Plaintiff's case should be dismissed because the Plaintiff failed to preserve the exterior casing, when it apparently has nothing to do with the Plaintiff's theory of liability and for all purposes appears to be irrelevant to the subject accident, must also fail.

With that being said, although the Metlife court concluded that no sanctions were warranted, this Court finds, in its discretion, that it is necessary to apply less drastic sanctions in order to avoid any potential prejudice to the Defendant, as limited as that prejudice might be. In this regard, given the similarities between this case and Dahoda, the Court turns to the Second Circuit's especially helpful guidance as to the appropriate sanctions to be applied. Rather than dismiss the plaintiffs' action or order the total preclusion of the plaintiffs' experts, the Second Circuit held that

> appropriate sanctions under the circumstances presented by this
> case might include a combination of: (1) precluding [the]
> plaintiffs' expert from offering any testimony regarding any test he
> conducted of the lawn tractor before he removed the OPC switch;
> (2) precluding [the] plaintiffs' expert from offering any testimony
> that the OPC switch was connected securely and properly prior to
> his removal; and (3) informing the jury of [the] plaintiffs' conduct
> regarding the switch and [the] defendants' alternate theories of
> causation, and instructing the jury that it is permitted to draw an
> adverse inference from [the] plaintiffs' removal of the OPC switch
> if it concludes such an inference is warranted based on the
> evidence presented.

Id. at 126.

The Court also relies on the holding in Wade v. Tiffin Motor Homes, Inc., 686 F. Supp. 2d 174 (N.D.N.Y. 2009). In Wade, the plaintiff brought a products liability suit for damages against the manufacturer of his RV, which had caught fire. Id. at 178–79. According to the plaintiff, the fire occurred because the RV was defective. Id. After the subject incident, the RV was left at the campground where the fire occurred, in an unsecured area and was subject to inclement weather, including snow. Id. at 185–86. As such, when the plaintiff's expert inspected the RV, he removed and secured as evidence piping from the RV . . . and the furnace" in order to protect this evidence from being lost or destroyed. Id. Nevertheless, the defendant brought a spoliation motion against the Plaintiff requesting, like the Defendant here, "either the dismissal of [the] [p]laintiff's action or the exclusion of any expert testimony on [the] [p]laintiff's behalf at any trial of this action." Id. at 193.

The Wade court denied the defendant's motion and instead, after determining that the plaintiff's actions only amounted to negligence, "[found] that the appropriate sanction to be imposed on [the] [p]laintiff[ ], at least for purposes of [the] [d]efendant's motion for summary judgment, is the exclusion of all testimony of [the plaintiff's expert] that is in any way based on

11

his personal observation of the gas lines before their removal (rather than being based exclusively on the photographs taken of the gas lines before their removal)." Id. at 197–98. Of importance, the Wade court emphasized that the prejudice to the defendant was limited because (1) the plaintiff provided the defendant with "numerous photographs of the RV taken after the accident but before the gas lines were removed"; (2) the defendant's experts had the opportunity to examine the RV and its gaslines and to use the photographs to reassemble the gaslines; and (3) the defendant's experts had the opportunity to review the reports of the plaintiff's expert. Id. at 197. In similar fashion, the Defendant in this case was also provided with photographs of the shock absorber before the exterior casing was cut into and was able to examine both the exterior casing and the interior components of the shock absorber together with the photographs.

As stated above, the Court does not believe that the Plaintiff, by cutting open the exterior casing in order to access the interior, either destroyed or significantly altered relevant evidence. Further, in the Court's views the Plaintiff's actions did not constitute bad faith or gross negligence. However, guided by the Second Circuit's Dahoda holding and in an abundance of caution, the Court imposes the following spoliation sanctions: (1) the Plaintiffs' experts are precluded from offering any testimony regarding the condition of the shock absorber before its exterior casing was cut open and removed or regarding any testing they may have conducted on the shock absorber before its exterior casing was cut open and removed; and (2) the Court will inform the jury of the Plaintiff's conduct regarding the exterior casing and of any of the Defendant's defenses that might relate to the exterior casing, and will instruct the jury that it may draw an adverse inference from the Plaintiff's removal of the exterior casing if it concludes such an inference is warranted based on the evidence presented.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Defendant's motions in limine are denied without prejudice with leave to refile just prior to or right after jury selection in this case. The Clerk of the Court is directed to terminate Dkt. Nos. 34, 43 and 46.

**ORDERED**, that the Defendant's motion for summary judgment is denied. Rather, the Court (1) precludes the Plaintiffs' experts from offering any testimony regarding the condition of the shock absorber before its exterior casing was cut open and removed or regarding any testing they may have conducted on the shock absorber before its exterior casing was cut open and removed; and (2) will inform the jury of the Plaintiff's conduct regarding the exterior casing and of any of the Defendant's defenses that might relate to the exterior casing, and will instruct the jury that it may draw an adverse inference from the Plaintiff's removal of the exterior casing if it concludes such an inference is warranted based on the evidence presented.


**SO ORDERED**.

Dated: Central Islip, New York
      November 30, 2013

                                                                         */s/ Arthur D. Spatt*
                                                                          ARTHUR D. SPATT
                                                             United States District Judge